[Cite as *Warren Family Funeral Homes, Inc. v. Toledo*, 2016-Ohio-5076.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Warren Family Funeral Homes, Inc | Court of Appeals No. L-15-1325 |
| Appellant | Trial Court No. CI0201404339 |
| v. | |
| City of Toledo, et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: July 22, 2016 |

* * * * *

Jerome Parker and Howard B. Hershman, for appellant.

Adam W. Loukx, Director of Law, and Jeffrey B. Charles,
Chief of Litigation, for appellees.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} In this accelerated appeal, appellant, Warren Family Funeral Homes, Inc.,

appeals the judgment of the Lucas County Court of Common Pleas, granting summary

judgment to appellees, the city of Toledo and the Toledo City Council ("City Council"),[1] in appellant's administrative appeal from the City Council's denial of appellant's request for a special use permit. For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} In 2006, City Council approved a request to change the zoning on a parcel of land located on the northeast corner of Heatherdowns Boulevard and Cass Road from "RS12 Single Family Residential" to "CN, Neighborhood Commercial." The zoning change was "intended to accommodate pedestrian oriented small-scale retail and service businesses that serve nearby residential areas."

{¶ 3} Three years after the zoning change, appellant obtained a special use permit to construct a funeral home on the land. This funeral home came to be known as Newcomer Funeral Home. The initial site plans for the funeral home did not include the construction of a crematorium.

{¶ 4} On May 20, 2014, City Council passed Ordinance 228-14, which amended certain provisions in the Toledo Municipal Code to "allow cremating as an accessory use to a funeral home with a Special Use Permit in CN Neighborhood Commercial zoning district." Prior to this time, cremation was not permitted in such districts due to environmental concerns. The policy change was motivated by "[r]ecent advancements in cremations services [that] have helped reduce emissions." Further, City Council

---

[1] The individual members of the Toledo City Council, in their capacity as such, were also named as defendants in this case and, thus, are also appellees in this action.

2.

determined that existing environmental regulations "will be protective of human health." Still, City Council saw it fit to impose the special use permit requirement in an effort to ensure that nearby property owners were not negatively impacted by the operation of a crematorium, and also to make certain that such operations were in compliance with all regulatory agencies.

{¶ 5} Following the passage of Ordinance 228-14, appellant filed a petition for a special use permit to add a crematorium to the Newcomer Funeral Home located on Heatherdowns Boulevard. The Toledo Plan Commission then held a hearing on the matter after providing public notice. Ultimately, the Toledo Plan Commission unanimously voted to recommend approval subject to several conditions. Thereafter, the special use permit was incorporated into Ordinance 430-14 and sent to City Council's Zoning and Planning Committee for further consideration.

{¶ 6} On September 17, 2014, the committee held an adjudicatory hearing on the matter, during which it took evidence from appellant as well as those opposed to the request. At the hearing, environmental issues were raised, as well as property value concerns voiced by nearby residents. Upon the conclusion of the hearing, the committee disapproved appellant's request for a special use permit. Afterwards, the City Council held a public meeting where 11 of its 12 members voted against passage of Ordinance 430-14, thereby denying appellant's petition for a special use permit.

{¶ 7} Approximately one month later, appellant filed a timely notice of appeal with the trial court pursuant to Chapter 2506 of the Ohio Revised Code, naming appellees

3.

as defendants.  In the notice of appeal, appellant alleged that City Council's denial of its petition for a special use permit was "unconstitutional, arbitrary, unreasonable, contrary to law, and unsupported by the preponderance of substantial, reliable, and probative evidence."[2]

{¶ 8} On March 9, 2015, appellant filed a "Motion for Judgment on the Transcript."  Along with their memorandum in opposition to appellant's motion, appellees filed a cross-motion for summary judgment.  The trial court issued its decision on the parties' competing motions on November 30, 2015.  In a 28-page decision, the trial court affirmed City Council's decision, finding, inter alia, that the denial of appellant's petition for a special use permit was not "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."  Concerning the environmental and financial impact of the crematorium on the surrounding area, the trial court indicated that "an examination of the whole record reveals that there exists sufficient reliable, probative, and substantial evidence to satisfy the requisite degree of proof in support of council's decision."

{¶ 9} Thereafter, appellant filed a timely notice of appeal from the trial court's decision.  Two weeks later, the matter was placed on the accelerated calendar.

---

[2] Appellant also sought a declaratory judgment.  The trial court's disposition of appellant's claim for a declaratory judgment has not been challenged in this appeal.

4.

## B. Assignment of Error

{¶ 10} On appeal, appellant assigns the following error for our review:

> The decision of the court below was arbitrary, unreasonable, and/or unsupported by the preponderance of substantial, reliable and probative evidence and should be reversed.

## II. Analysis

{¶ 11} In its sole assignment of error, appellant argues that the trial court erred in affirming City Council's decision where that decision was not supported by the preponderance of reliable, probative, and substantial evidence.

{¶ 12} Initially, we note that this court has a limited function in proceedings such as this. As set forth in R.C. 2506.01, appeal of a final decision of an administrative body is made to the common pleas court. Appeal of the common pleas court judgment is made to the court of appeals. R.C. 2506.04. When reviewing an administrative appeal brought pursuant to R.C. 2506.01, "the common pleas court considers the 'whole record,' * * * and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). Our standard of review is narrow in scope and requires that the common pleas court's decision be affirmed unless we find, as a matter of law, that the decision is not supported by a preponderance of reliable, probative and

5.

substantial evidence. *Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608, 613, 693 N.E.2d 219 (1998). (Citations omitted.)

It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so. *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261, 533 N.E.2d 264 (1988).

{¶ 13} An abuse of discretion implies that the action of the trial court was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} Appellant's petition for a special use permit is governed by Toledo Municipal Code 1111.0706, which states:

In reviewing and making decisions on proposed Special Uses, review and decisionmaking bodies must consider at least the following factors:

A. Whether the proposed use meets the stated purpose of this Zoning Code (See Section 1101.0400);

6.

B. Whether the proposed use complies with all applicable provisions of this Zoning Code;

C. Whether the proposed use is compatible with adjacent uses in terms of scale, site design, and operating characteristics (hours of operation, traffic generation, lighting, noise, odor, dust, and other impacts associated with the use's operation);

D. How the proposed use will affect the value of other property in the neighborhood in which it is to be located;

E. Whether the City and other service providers will be able to provide sufficient public safety, transportation, and utility facilities and services to the subject property while maintaining sufficient levels of service for existing development; and

F. Whether the proposed use will have any adverse land or environmental impacts and, if so, whether those impacts can and will be mitigated.

{¶ 15} At adjudicatory hearings, such as the one held in this matter, the rights of specific persons are determined based upon the direct evidence presented, not public opinion. *Adelman Real Estate Co. v. Gabanic*, 109 Ohio App.3d 689, 694-695, 672 N.E.2d 1087 (11th Dist.1996). Consequently, witnesses must testify about relevant facts, not their subjective and unsubstantiated opinions. Such witnesses must also be subject to cross-examination. *Id.* The unsworn testimony of a witness is not evidence that the

7.

board may consider. *Heiney v. Bd. of Zoning Appeals*, 126 Ohio App.3d 391, 396, 710 N.E.2d 725 (6th Dist.1998), citing *Arcaro Bros. Builders, Inc. v. N. College Hill Zoning Bd. of Appeals*, 7 Ohio St.2d 32, 218 N.E.2d 179 (1966).

{¶ 16} In support of its argument concerning the nature of the evidence presented at the adjudicatory hearing in this case, appellant cites our prior decision in *Heiney*. There, we reversed the decision of the Sylvania Board of Zoning Appeals, which denied a request for a conditional use permit filed by an assisted living developer on the basis that such development would increase traffic in an already congested area. In reversing the zoning board's decision, we noted that the adjudicatory hearing conducted before the board was not properly conducted, because there was no hearing examiner and the majority of the witnesses were "either incompetent to testify or did not testify as to relevant, probative facts." *Heiney* at 396. We went on to examine the testimony presented at the adjudicatory hearing, finding that it was rife with opinions and irrelevant material. *Id.* Indeed, we stated that the only probative evidence presented was in the form of testimony presented by a traffic engineer and a land use expert, each of whom stated that the anticipated traffic from the proposed assisted living facility would have minimal impact on the area. *Id.*

{¶ 17} Citing our decision in *Heiney*, appellant argues that City Council's denial of its petition, premised upon a finding that the crematorium would likely diminish nearby property values and present an environmental hazard, was not supported by the evidence. More specifically, appellant contends:

8.

Other than the references made by Councilwoman Webb to a 2010 study conducted by the Department of Economics at Penn State University, concerning impact of crematorium operations on residential values, there was nothing but the testimony of those expressing personal opinions and unfounded conjecture presented in opposition to the [special use permit]. Such public comment, although permissible, does not constitute evidence and may not be relied upon by council, or the Common Pleas Court, as support for its decision.

{¶ 18} We agree with appellant that, like the evidence presented in *Heiney*, the testimony presented in this case included a fair amount of speculation and lay opinion testimony. However, this case is different from *Heiney* in that substantial, reliable, and probative evidence to support City Council's decision also exists in the record. In particular, the record contains a reference to a 2010 Penn State study, which, according to Councilwoman Lindsay Webb, found that "the proximity both measured in terms of direction and distance from the crematorium imparts a statistically significant negative impact on the average house sale price." The property value issue was also a concern voiced by the residents that testified at the adjudicatory hearing. One such resident testified concerning the monitoring standards imposed on crematoriums by the Ohio Environmental Protection Agency (OEPA), stating that crematoriums are only inspected every five years. The resident went on to indicate that the City of Toledo Division of Environmental Services relies upon self-reporting and self-monitoring in its handling of

9.

crematoriums in the city of Toledo. Additionally, the resident referenced a 2009 article provided to her by the OEPA, which found that more research on the potential health risks from crematorium emissions is necessary.

{¶ 19} In response to these witnesses, appellant presented testimony from a local real estate appraiser, who testified that, in his professional opinion, "there is zero impact on any of the adjacent properties." He went on to state that he would not make any deductions as to value for these properties on account of the crematorium if he were to appraise them. Notably, the appraiser's research was limited to a review of the properties and a drive through the neighborhood. The appraiser did not actually conduct an appraisal on the properties located in the vicinity of the funeral home.

{¶ 20} Based upon our review of the hearing transcripts in this case, and in light of our limited standard of review in this case, we find that City Council's determination as to the impact of the proposed crematorium on nearby property values was supported by the evidence. Whether the evidence that was presented by appellant to dispel the property value issue was more credible or probative than the Penn State study findings and testimony of the concerned residents was a question for the trial court to resolve. We do not find that the trial court abused its discretion in resolving that question.

{¶ 21} Accordingly, appellant's sole assignment of error is not well-taken.

10.

### III.  Conclusion

**{¶ 22}** The judgment of the Lucas County Court of Common Pleas is affirmed.

Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.           _____
                                                          JUDGE

Thomas J. Osowik, J.

                                           _____
Stephen A. Yarbrough, J.                          JUDGE
CONCUR.

                                           _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.